Per Curiam,
The first assignment raises the question whether, under the will of Samuel Geiger, his widow, Sarah Geiger, took a fee or only a life estate. This is the important question in the case, though one entirely free from difficulty. The first clause in the will is as absolute a devise to the widow as could well be made, and the provision in the second clause, authorizing the executors to sell the real estate for the payment of debts does not in any degree curtail the previous devise. It merely authorizes the executors to do what the law authorizes them to do. Then follows the provision: “Also, I do direct, after the death of my wife, the property, both real and personal, shall and must be sold, and all my just debts paid, and the remainder of my money to be equally shared amongst my children.” That this cuts the fee down to an estate for life is too plain for argument. Being the later clause in the will, it must prevail. With this point established, we find no error in the ruling of the orphans’ court upon the account of Albert Geiger, the surviving executor of Samuel Geiger. It was, perhaps, his misfortune that he yielded too readily to the demands of the widow, who was also his mother and co-executor. She appears to have been an imperious woman and thought she owned *553 the estate in fee. But those who assume trusts must conform to the law.
The executor charged himself with the sum of $2,000, the purchase money of certain real estate sold to Michael E. Geiger, but which was in reality a sale to the accountant. This property, after several years, was re-sold by the accountant at a considerable advance. The court below did not surcharge him with this difference, in view of the fact that the increase of price was due to the improvements which he had put upon the property, and that in the matter of the sale he had acted in good faith.
The book account of $179.69, which the accountant claimed against his father’s estate, was properly disallowed for very satisfactory reasons given by the auditor. He was the only witness to prove it; his book was manifestly not a book of original entries, and the claim itself was ancient, running back to 1847.
The duty of the life-tenant to keep down interest on encumbrances is so well settled that authorities upon this point need not be cited. Hence the credits claimed for this purpose were properly rejected.
As to the refusal of the court to allow commissions, it is sufficient to say that compensation is given only to the faithful steward. This accountant may not have intended any wrong; his derelictions may have been the result of ignorance, but we cannot excuse him on that account, and place him on the same plane with those who perform their duties intelligently. He appears to have used the moneys of the estate as his own; kept no separate bank account; did not produce vouchers for many of his items of credit, and, as the learned auditor finds, “files such an account as has caused a long, tedious and expensive audit to ascertain that which it was his legal duty to have kept clear and simple.” Whether such consequences are produced by knavery or stupidity, the results are the same to the parties whose money is thus wasted.
We find no error in this record.
The decree is affirmed and the appeal dismissed at the costs of the appellant. «